IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Linda Shealey,                    )      Civil Action No. 8:13-2383-RMG-JDA
                                  )
            Plaintiff,            )
                                  )      **REPORT AND RECOMMENDATION**
                                  )      **OF MAGISTRATE JUDGE**
      vs.                         )
                                  )
Carolyn W. Colvin,                )
Commissioner of Social Security,  )
                                  )
            Defendant.            )

        This matter is before the Court for a Report and Recommendation pursuant to Local

Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final

decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's

claim for disability insurance benefits ("DIB").  For the reasons set forth below,  it is

recommended that the decision of the Commissioner be reversed and remanded for

administrative action consistent with this recommendation, pursuant to sentence four of 42

U.S.C. § 405(g).

### PROCEDURAL HISTORY

        On March 23, 2010, Plaintiff protectively filed an application for DIB, alleging an

onset of disability date of August 12, 2009. [R. 29, 167–68.] The claim was denied initially

and on reconsideration by the Social Security Administration ("the Administration"). [R.

_____

        [1]A Report and Recommendation is being filed in this case, in which one or both parties
declined to consent to disposition by a magistrate judge.

110–13, 115–16]. Plaintiff requested a hearing before an administrative law judge ("ALJ"), and, on April 23, 2012, ALJ Walter C. Herin, Jr., conducted a de novo hearing on Plaintiff's claims. [R. 44–104.]

The ALJ issued a decision on June 28, 2012, finding that Plaintiff has not been under a disability as defined by the Act from August 12, 2009, through the date of the decision. [R. 29–36.] At Step 1,[2] the ALJ found Plaintiff met the insured status requirements of the Social Security Act ("the Act") through September 30, 2015, and had not engaged in substantial gainful activity since August 12, 2009, the alleged onset date. [R. 31, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative joint disease, right ankle, status post arthroscopic repair; degenerative joint disease, left shoulder; and degenerative disc disease, lumbar spine. [R. 31, Finding 3.] The ALJ also found Plaintiff had non-severe impairments: remote history of surgery, right wrist, without recent treatment; hypertension; diabetes mellitus; hypothyroidism; and mood disorder. [R. 31–32.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 32, Finding 4.] The ALJ specifically considered Listings 1.02, 1.04, and 12.04. [R. 32.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found

> that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with restrictions that require no lifting or carrying over ten pounds

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

occasionally and less than ten pounds frequently; no standing and/or walking over two hours in an eight-hour workday; no more than occasional stooping, crouching, kneeling, or climbing of stairs or ramps; no more than frequent balancing; no crawling or climbing of ladders, ropes or scaffolds; only frequent use of foot pedals or other controls with the bilateral lower extremities; and avoidance of hazards such as unprotected heights, dangerous machinery, uneven terrain, or commercial driving.

[R. 32–36, Finding 5.]  Based on this residual functional capacity ("RFC") finding, at Step 4, and the testimony of a vocational expert ("VE"), the ALJ determined Plaintiff was capable of performing past relevant work as an order clerk. [R. 36, Finding 6].  On this basis, the ALJ found Plaintiff had not been under a disability, as defined by the Act, from August 12, 2009, through the date of the decision.  [R. 36, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision, and the Council declined review.  [R. 1–5.]  Plaintiff filed this action for judicial review on September 3, 2013.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and that remand for an award of benefits is proper for the following reasons:

1.    The ALJ failed to perform a proper analysis of Plaintiff's ability to perform her past relevant work in compliance with SSR 82-62 in that he found Plaintiff capable of performing work as an "order clerk" when she "never actually performed this work specifically";

2.    The ALJ failed to make findings regarding the physical and mental demands of Plaintiff's past job/occupation as required by SSR 82-62; and

3.    The ALJ failed to properly evaluate Plaintiff's credibility and failed to provide any discussion regarding Plaintiff's pain in his decision.

3

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence for the following reasons:

1.   The ALJ properly found Plaintiff could perform her past relevant work as an order clerk where her work as an order clerk was performed contemporaneously with other duties;

2.   The ALJ properly made findings of fact as to the physical and mental demands of Plaintiff's past relevant work as required by SR 82-62 and properly relied on Plaintiff's ability to perform the job as actually performed in the national economy; and,

3.   The ALJ properly evaluated Plaintiff's credibility and found Plaintiff's allegations concerning the severity and limiting effects of her impairments were not fully credible to the extent they exceeded the limitations contained in the RFC.

The Commissioner asks the Court to uphold its decision.

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

4

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and

when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3] With remand under sentence

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

---

United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

8

impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

9

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C.** ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir.

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe

12

into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

14

V.    **Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has

15

rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Past Relevant Work**

Plaintiff contends that her duties as an "order clerk" were improperly parsed out of her actual past jobs with Federal Express ("FedEx") in finding her capable of performing past relevant work.  [Doc. 21 at 24.] Plaintiff contends that because she performed a composite job that included order clerk along with either material handler or a store's laborer, the ALJ was prohibited from analyzing whether she could perform past relevant

work of order clerk as it is generally performed in the economy; the ALJ was required to determine if Plaintiff could actually perform her specific past job.  Thus, she contends the ALJ's determination that she could perform past relevant work of order clerk is not supported by substantial evidence.  Plaintiff further argues the ALJ failed to comply with SSR 82-62, which requires the ALJ to make "finding[s] of fact as to the physical and mental demands of the past job/occupation."  [*Id.* at 26.]  Plaintiff argues the ALJ did not provide any discussion of what he considered to be the pertinent duties of her past relevant work as an order clerk and, thus, the ALJ' s decision at Step 4 was not supported by substantial evidence.  [*Id.* at 27.]

The Commissioner contends the ALJ properly relied on the VE's testimony that Plaintiff's past relevant work included the job of "order clerk," and Plaintiff's testimony was that she was hired as a customer service agent and initially worked at the counter dealing with customers and receiving packages for shipping; consequently, Plaintiff's work as an order clerk was one of a myriad of tasks she performed at FedEx .  [Doc. 23 at 17.]   The Commissioner contends that the fact that Plaintiff's prior job was composite did not preclude the ALJ from finding one of the constituent occupations to be past relevant work. [*Id.* at 17–18.]

The Court agrees with Plaintiff that the Commissioner's decision is not supported by substantial evidence and fails to provide the Court with sufficient reasoning to determine that the Commissioner properly applied the law.

***Background regarding Past Relevant Work***

Plaintiff represented her past work history in a Work History Report dated May 20, 2010, as including the following:

| | | |
|---|---|---|
| * | Receptionist at a Day Spa | Greet customers, book appointments via computer, answer phone, sales/register, accept payments, issue gift cards, stock inventory, no sitting ever |
| * | Customer Service Agent (FedEx) | Greet customers, accept packages/shipments over counter, process (accept money), label, scan, deliver hold packages, load & unload processed packages in warehouse, resolve customer complaints; constant movement with standing about 5 hours in the day and lifting up to 75 pounds |
| * | (Ramp) Customer Service Agent (FedEx) | Greet customers, accept packages over counter, unload/load palletized shipments w/fork lift, process counter packages, (accept money, label, scan), unload packages in warehouse, resolve customer complaints, run compliance reports until 100%; stand about 4 ½ hours and sit ½ hours in the day; constant moving and lifting up to 75 pounds |
| * | Hwt. Customer Service Agent (FedEx) | Unload HWT shipments with forklift, scan/inspect for damage, notify HOLD shipment recipients, load and unload trucks, resolve customer complaints, constant communication with HWT delivery drivers/Federal Express; walk and sit about 2 hours a day each; lift up to 20 pounds |
| * | Handler with FedEx | Unload containers, scan packages, load containers, set-up scan guns for sort; constant movement for about 3 hours; lift up to 75 pounds |

|  |  |
|---|---|
| *  Handler/Drop Box with FedEx | Audit drop boxes, drive step-van, load/unload van, cleaning supplies, drop-box supplies, complete audit forms, re-stock boxes, photograph boxes (before/after); lifted up to 75 pounds |

[R. 223–30.] Plaintiff testified that she worked for FedEx from 1997 through 2012, but actually stopped working in August 2009 and had been on workers' compensation after that time. [R. 58, 60.] She testified that when she began with FedEx she worked at the counter as a customer service agent, dealing with the public and taking in packages. [R. 58–59.] She explained that the customer service agent job with FedEx is "all physical," "so demanding," "so many hats that you have to wear," "from checking in the handlers to answering the customer complaint, the phone, the managers, the front counter, the complaints," and she could never perform that job again. [R. 80.] In a different work background report, Plaintiff represented that she had also previously worked at a receptionist at JB White department store from 1994 to 1997. [R. 285.]

In the hearing before the ALJ, the ALJ asked the VE if he had any questions about Plaintiff's past work, and the VE presented Plaintiff with one question about her job as a forklift driver. [R. 93–94.] The VE did not ask Plaintiff about her past job duties as a customer service agent or order clerk duties. [*Id.*] The VE then described Plaintiff's past work in the following vocational terms:

> Okay. Judge, based upon what was in the written record as well as that clarification, I have five DOT titles. We have work as what would be best described as a route driver. This was when the Claimant would go to the drop boxes, clean them, et cetera. It has a DOT number of 292.353-010, classified as medium in exertional level, up to 50 pounds, and apparently that was how it was performed with an SVP of 3, which is the beginning of semi-skilled. We have work as a material handler, 929.687-030, heavy exertional with an SVP of 3. Work as what

20

it called a store's laborer, 922.684-058, medium exertional level with an SVP of 2, which is unskilled.

Now, at the same time, we would be having what is titled as an order clerk. This is an individual that processes orders of customers. It has a DOT number of 249.362-026.[6] In the DOT, it's classified as sedentary with an SVP of 4, mid-range of semiskilled. However, it was performed in conjunction with being a material handler and/or a store's laborer depending upon the assigned duties at the time, so it was never performed separately. We also have work, and this is based on the clarification, as a forklift driver, 921.683-050, medium exertional level with an SVP of 3, beginning of semi-skilled.

[R. 94–95.]

---

[6]DOT 249.362-026, Order Clerk (clerical) provides as follows:

Processes orders for material or merchandise received by mail, telephone, or personally from customer or company employee, manually or using computer or calculating machine: Edits orders received for price and nomenclature. Informs customer of unit prices, shipping date, anticipated delays, and any additional information needed by customer, using mail or telephone. Writes or types order form, or enters data into computer, to determine total cost for customer. Records or files copy of orders received according to expected delivery date. May ascertain credit rating of customer [CREDIT CLERK (clerical) 205.367-022]. May check inventory control and notify stock control departments of orders that would deplete stock. May initiate purchase requisitions. May route orders to departments for filling and follow up on orders to ensure delivery by specified dates and be designated Telephone-Order Dispatcher (clerical). May compute price, discount, sales representative's commission, and shipping charges. May prepare invoices and shipping documents, such as bill of lading [BILLING TYPIST (clerical) 214.382-014]. May recommend type of packing or labeling needed on order. May receive and check customer complaints [CUSTOMER-COMPLAINT CLERK (clerical) 241.367-014]. May confer with production, sales, shipping, warehouse, or common carrier personnel to expedite or trace missing or delayed shipments. May attempt to sell additional merchandise to customer [TELEPHONE SOLICITOR (any industry) 299.357-014]. May compile statistics and prepare various reports for management. May be designated according to method of receiving orders as Mail-Order Clerk (clerical); Telephone-Order Clerk (clerical).

***Discussion***

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  SSR 82–62, 1982 WL 31386, at *3.  Plaintiff bears the burden of establishing her inability to work within the meaning of the Act.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  She must make a prima facie showing of disability by showing she is unable to return to her past relevant work.  *Id.*

Social Security Ruling 82–62 sets forth in detail what is required of an ALJ in finding that a claimant can return to past relevant work. In part, SSR 82–62 states:

> Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.
>
> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

In the event the main duties of past relevant work can only be described by considering multiple DOT occupations, a plaintiff may be considered to have performed a composite job.  *See Plumb v. Astrue*, C/A No. 8:10-3090-RBH, 2012 WL 768058, at *6 (D.S.C. March 7, 2012) (remanding with the instruction that the ALJ must determine

whether the past relevant work was a composite job); *see also* the Administration's Program Operations Manual System ("POMS") at DI 25005.020B ("Past Relevant Work (PRW) as the Claimant Performed It").   According to this POMS section, if the ALJ determines that Plaintiff's past relevant work is a composite job, he must explain why. POMS DI:25005.020B.   And, when comparing the Plaintiff's RFC to a composite job as it was performed, the ALJ must find the Plaintiff capable of performing the composite job only if he or she can perform all parts of the job.  *Id.*  This POMS section also informs the ALJ that "[a] composite job will not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'"  *Id.*  According to POMS DI:25005.025 "Past Relevant Work (PRW) as Generally Performed in the National Economy," if there is no occupational counterpart in the DOT for Plaintiff's work, "it will not be possible to evaluate past relevant (PRW) as workers generally perform it in the national economy."  POMS DI:25005.025A, C.  At Step 5, however, it may be found that Plaintiff can use skills she gained from a composite job to adjust to other work.  POMS DI:25005.020B.

Upon review and consideration of the ALJ's decision, the Court finds that the ALJ failed to properly explain his reasoning for finding the job of "order clerk" to be past relevant work for Plaintiff as opposed to finding it to be part of a composite job. *See* POMS 25005.020B.  The VE explained that, although Plaintiff performed job duties of an order clerk, she always performed them in conjunction with duties of a material handler and/or a store's laborer.   And, the ALJ specifically found Plaintiff was not still capable of performing the "other duties" outside of order clerk duties, specifically referencing the VE's testimony that discussed the other duties as material handler and/or a store's laborer.

According to the POMS, when comparing the Plaintiff's RFC to a composite job as it was performed, the ALJ must find the Plaintiff capable of performing the composite job only if he or she can perform all parts of the job.  The ALJ's decision contains no such discussion.  In fact, the Court notes Plaintiff described her job duties with FedEx as requiring mostly constant movement between 3–5 hours a day, lifting between 20–75 pounds, and no sitting. [*See* R. 223–30.]  In finding that Plaintiff could perform her past relevant work of order clerk, classified as a sedentary job[7], the ALJ appears to have based his RFC determination on the least demanding aspect of Plaintiff's composite job.  Such a finding is contrary to law and the Administration's own regulations.

The Ninth Circuit Court of Appeals has spoken on this issue and held that an ALJ may not deem a plaintiff capable of performing past relevant work by dividing the demands of a composite job into two separate jobs and finding him or her capable of performing the less demanding of the two jobs.  *See, e.g., Vertigan v. Halter*, 260 F.3d 1044, 1051 (9th Cir. 2001) (finding that the ALJ's conclusion that claimant's past relevant work included work as a "cashier" was not supported by substantial evidence—the VE had found her past relevant work to be that of a pharmacy clerk or sales clerk, not as a receptionist or cashier, and the VE stated, when considering Vertigan's testimony, she had never performed work solely as a cashier); *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985) ("Every occupation consists of a myriad of tasks, each involving different degrees of physical exertion. To classify an applicant's 'past relevant work' according to the least demanding

---

[7]Sedentary work involves lifting up to ten pounds, standing two hours during an eight-hour day, walking two hours in an eight-hour day, and sitting six- hours in an eight (8) hour day.  *See* SSR 83-10.

24

function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act."); *see also Roberts v. Astrue*, No. 8:08-CV-120-T-17EAJ, 2009 WL 722550, at *3 (M.D.Fla. Mar.18, 2009) ("In deciding whether claimant can perform [her] past relevant work, an ALJ may not separate a composite job into two jobs and fail to focus on all the demands of the composite job.").

Although it appears that the Fourth Circuit Court of Appeals has not discussed composite jobs and the Commissioner's obligation to determine whether a past job should be considered a composite job, and, if so, how to analyze it properly with regard to Step 4 of the sequential questions, the Court located a few pertinent district opinions. In *Plumb v. Astrue*, C/A No. 8:10-3090-RBH, 2012 WL 768058, at *6 (D.S.C. March 7, 2012), where the plaintiff objected to the ALJ's finding that he could perform his past relevant work as a liquor store owner/operator and his work should have been deemed a composite job, this Court ruled that on remand the ALJ must determine whether the past relevant work was a composite job. In *Plumb*, the VE had testified that the plaintiff's work broke down into two DOTs and the plaintiff could not perform the job as actually performed because his prior work involved lifting boxes and other medium work. *Id.* Similarly, the VE in this case stated that Plaintiff's prior job duties as order clerk were always performed with the duties of material handler or store's laborer, and the ALJ also failed to discuss whether the job was a composite job. This is significant because if Plaintiff's past job was in fact a composite job, the POMS would have prohibited the ALJ from deciding whether Plaintiff could perform his past relevant work as it is generally performed. On the other hand, in *Miles v. Astrue*, C/A No. 8:07-3164-RBH, 2009 WL 890651, at *6, 11–13 (D.S.C. March 30, 2009), where the plaintiff argued she had a composite job, the Court found substantial evidence

supported the ALJ's decision because the plaintiff clearly testified that the main duty of her past work was as a data entry clerk and the inventory work was infrequent, and the ALJ did not cull the responsibilities of the prior work to find a skill she could perform which could be characterized as past work.  In contrast to *Miles*, Plaintiff here did not testify that her main duties of any FedEx job were composed of order clerk duties.

Additionally, as Plaintiff contends, the ALJ had the duty to make factual findings as to the physical and mental demands of her past jobs.  *See Plumb v. Astrue*, C/A No. 8:10-3090-RBH, 2012 WL 768058, at *6.  Although the ALJ stated, "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work," apparently referring to her work as an order clerk, the ALJ did not specifically discuss the demands of an order clerk job except to mention that the VE found it to be sedentary and semi-skilled. The ALJ did not make specific findings of the demands of Plaintiff's past relevant work, and, as such, the ALJ did not adequately comply with SSR 82-62.

While the Court agrees with the Commissioner's position that Plaintiff must carry the burden at Step 4 to show that she could not perform her past relevant work, the Court is not persuaded that substantial evidence supports the ALJ's finding that Plaintiff can return to work as an order clerk.  On remand, the ALJ should make factual findings, and fully explain his reasoning, to determine whether Plaintiff's past relevant work was simply an order clerk, or if her past relevant work was a composite job.  Also, the ALJ should explain whether Plaintiff has the RFC to perform the exertional demands of all the tasks of the composite job.  Of course, if the ALJ finds that the Plaintiff cannot perform her past relevant work, then he must proceed to Step 5 of the sequential analysis.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ's failure to properly explain his determination of Plaintiff's past relevant work is a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ.  However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

**IT IS SO RECOMMENDED**.


s/Jacquelyn D. Austin
United States Magistrate Judge

January 21  , 2015
Greenville, South Carolina